[Cite as *Cunningham v. Bone Dry Waterproofing, Inc.*, 2016-Ohio-3341.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Mark A. Cunningham, | : | |
| Plaintiff-Appellant, | : | No. 15AP-587 |
| | | (C.P.C. No. 14CV-5801) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Bone Dry Waterproofing, Inc. et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 9, 2016

**On brief:** *Gloria P. Castrodale*, for appellant. **Argued:** *Gloria P. Castrodale*.

**On brief:** *Porter Wright Morris & Arthur*, *LLP*, and *Karl J. Sutter*, for appellee Bone Dry Waterproofing, Inc. **Argued:** *Karl J. Sutter*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Mark A. Cunningham, plaintiff-appellant, appeals the judgment of the Franklin County Court of Common Pleas, in which the court granted the motion for summary judgment filed by Bone Dry Waterproofing, Inc. ("Bone Dry"), defendant-appellee.

{¶ 2} Appellant worked for Bone Dry, which is located in Columbus, Ohio. He waterproofed newly built houses by applying a special "paint" onto the concrete block foundations using paint brushes. Bone Dry would inform appellant which houses needed waterproofing and appellant would drive his personal vehicle to the house. He obtained the special paint from Bone Dry's headquarters, and he could obtain the paint brushes

from either Bone Dry's headquarters or purchase them himself, with Bone Dry reimbursing him. He kept extra paint and new and used paint brushes at his personal residence so he would not have to travel to Bone Dry's headquarters before every new job. He would store used paint brushes in a bucket of water at his house so he could reuse them. Bone Dry paid appellant $50 per job and for his gas based on mileage for out-of-town jobs.

{¶ 3}   Appellant could work as many as five jobs in five different locations in one day. His jobs were mostly in Ohio, but he also travelled to two or three jobs in Pennsylvania. For example, in the week prior to the accident in question, appellant had travelled to numerous cities outside of Columbus for jobs, including Jeffersonville, Cambridge, Marietta, Caldwell, Plain City, and Newport. In the month prior to the accident, he had worked mainly out of town.

{¶ 4}   On May 2, 2013, appellant was not scheduled to work, but he drove to Bone Dry's headquarters in east Columbus to pick up his paycheck. Appellant's brother, David Cunningham, accompanied him, and the two planned to spend the day together. Bone Dry informed appellant that it had three jobs for him to complete in a neighborhood in Powell, Ohio, which is north of Columbus, and the jobs had to be completed that day. Appellant took paint from the headquarters and began to drive to his house in southern Columbus to pick up paint brushes for the three jobs, after which he planned to drop off his brother, who lived about a quarter of a mile from appellant's home, before continuing to the first job site. However, before he could reach his home, his vehicle was struck by another vehicle, and appellant sustained serious injuries.

{¶ 5}   Appellant filed a workers' compensation claim based on his injuries. Steve Buehrer, Administrator, Ohio Bureau of Workers' Compensation ("bureau"), defendant-appellee, allowed appellant's claim for workers' compensation. Bone Dry appealed the order to a district hearing officer, who affirmed the allowance. Bone Dry appealed the order to a staff hearing officer, who affirmed the allowance. Bone Dry appealed the order to the Industrial Commission of Ohio ("commission"), which refused the appeal. Bone Dry filed a request for reconsideration, which the commission granted. After a hearing, the commission affirmed the previous orders.

{¶ 6} On June 3, 2014, Bone Dry filed an appeal of the allowance in the Franklin County Court of Common Pleas. On April 22, 2015, Bone Dry filed a motion for summary judgment, arguing appellant's injuries did not occur in the course of and arising out of his employment. On June 3, 2015, the common pleas court granted Bone Dry's motion for summary judgment and, on June 12, 2015, the court entered judgment. Appellant appeals the judgment of the trial court, asserting the following assignments of error:

> [I.]  The trial court erred by drawing inferences in favor of the party seeking summary judgment Appellee-Defendant, Bone Dry Waterproofing, Inc. ("Bone Dry") rather than viewing the evidence in the light most favorable to the non-moving part[y], the employee, Mark Cunningham.
>
> [II.] The trial court erred in finding that there were no material facts related to the question of whether Mark Cunningham was a "fixed situs employee."
>
> [III.] The trial court erred in applying the coming and going rule when travel was a fundamental part of Cunningham's job duties.
>
> [IV.] The trial court erred in granting summary judgment when issues of fact existed as to whether Mark Cunningham was a "fixed situs employee" and whether traveling to various job locations was a special hazard of Cunningham's job.

{¶ 7}  We will address appellant's assignments of error together, as they all relate to whether appellant's injuries occurred in the course of, and arising out of, his employment and, taken together, challenge the trial court's granting of summary judgment in favor of Bone Dry. Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).  Appellate review of a trial court's entry of summary judgment is de novo, applying the same standard used by the trial court. *McKay v. Cutlip*, 80 Ohio App.3d 487, 491 (9th Dist.1992). The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record

that demonstrate an absence of genuine issues of material fact as to the essential elements of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. *Id.* Once this burden is satisfied, the non-moving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. *Id.* The non-moving party may not rest upon the allegations or denials in the pleadings but must affirmatively demonstrate the existence of a genuine issue of material fact to prevent the granting of a motion for summary judgment. Civ.R. 56(C); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988).

{¶ 8} "The test of the right to participate in the Workers' Compensation Fund is not whether there was any fault or neglect on the part of the employer or his employees, but whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment." *Bralley v. Daugherty*, 61 Ohio St.2d 302, 303 (1980). For purposes of the Ohio Workers' Compensation statutes, " '[i]njury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). Thus, to be compensable under the workers' compensation fund, an employee's injury must be (1) received in the course of, and (2) arising out of, his or her employment. *Id.*; *Bralley* at 303; *Lippolt v. William R. Hague, Inc.*, 10th Dist. No. 08AP-140, 2008-Ohio-5070, ¶ 10. The employee bears the burden to prove both prongs of this two-prong formula. *Fisher v. Mayfield*, 49 Ohio St.3d 275, 279 (1990). In interpreting the relevant statutory requirements, we recognize that the workers' compensation statutes should be liberally construed in favor of awarding benefits. R.C. 4123.95; *Id.* at 278.

{¶ 9} The Supreme Court of Ohio defined "in the course of employment":

> The phrase "in the course of employment" limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service. * * * "To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer." * * * An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business.

*Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 120 (1998). The determination of whether an injury occurs in the course of employment requires courts to look at the time, place, and circumstances of the injury. *Id.*, citing *Fisher* at 277. These factors are used to determine "whether the required nexus exists between the employment relationship and the injurious activity." *Id.*

{¶ 10} "As a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist." *MTD Prods., Inc. v. Robatin*, 61 Ohio St.3d 66 (1991), syllabus. This is referred to as the "coming-and-going" rule, which is "a tool used to determine whether an injury suffered by an employee in a traffic accident occurs 'in the course of' and 'arises out of' the employment relationship so as to constitute a compensable injury." *Ruckman* at 119.

{¶ 11} The "coming-and-going" rule applies to "fixed-situs" employees. The Supreme Court has defined a fixed-situs employee as one who "commences his or her substantial employment duties only after arriving at a specific and identifiable workplace designated by his employer," regardless of the fact that he may be "reassigned to a different work place monthly, weekly, or even daily." *Id.* at paragraph one of the syllabus. "In such a situation, each particular job site may constitute a fixed place of employment." *Barber v. Buckeye Masonry & Constr. Co.*, 146 Ohio App.3d 262, 270 (11th Dist.2001).

{¶ 12} In the present case, the trial court found that appellant was a fixed-situs employee, reasoning that appellant would drive from his home or Bone Dry's office to a specified job location, he was paid by the job, and his substantial employment duties commenced only after he arrived at the job site. Thus, the trial court concluded the coming-and-going rule was applicable.

{¶ 13} We agree with the trial court that appellant was a fixed-situs employee. Appellant testified that he would drive from site to site, sometimes up to five job sites per day, to paint waterproofing material on the top two courses of basement foundations. He was paid by the job and for gas. On the day of the accident, appellant had the day off from work but had driven to Bone Dry's headquarters to pick up his paycheck with his brother. Bone Dry informed appellant that it had three jobs for him to complete, and they needed

to be completed that day. He left Bone Dry's headquarters to pick up paint brushes from his house, after which he was going to drop off his brother at his house. Appellant was injured on his way to pick up the paint brushes. The paint brushes were provided by Bone Dry but appellant kept them stored in a bucket of water at his house. He testified that if he was out of town and needed a paint brush, he would buy one, and Bone Dry would reimburse him.

{¶ 14} The undisputed facts show that, although the paint brushes were obviously required to paint, appellant was not required to store them at his house and use those paint brushes to carry out his job. Appellant stored them at his house because it was more convenient and efficient for him than having to drive to Bone Dry's headquarters to get them before every job. Appellant could also purchase paint brushes and be reimbursed by Bone Dry or get paint brushes from Bone Dry's headquarters. Therefore, the facts demonstrate that appellant's detour toward his home and his brother's home prior to undertaking the painting job in Powell was not required as a part of his work.

{¶ 15} Under these facts, the use of paint brushes that appellant personally stores at his home was not part of his "substantial employment duties," particularly when "examin[ing] * * * the employee's duties as a whole and consider[ing] * * * whether such duties were such as to make travel to and from the employee's home an integral part of the employee's employment." *Cossin v. Ohio State Home Servs.*, 10th Dist. No. 12AP-132, 2012-Ohio-5664, ¶ 23, 27, citing *Ruckman* at 120, and *Bennett v. Goodremont's, Inc.*, 6th Dist. No. L-08-1193, 2009-Ohio-2920. As such, as a matter of law, appellant does not commence his substantial employment duties in his pursuit of the paint brushes at his home but, rather, commences substantial employment duties only when he arrives at the job site. That he often travels to multiple job sites on a single day does not alter this conclusion. *See Palette v. Fowler Elec. Co.*, 11th Dist. No. 2014-G-3196, 2014-Ohio-5376, ¶ 28 (that field service technician often reported to two jobs sites in one day did not alter the conclusion that he was a fixed-situs employee), citing *Gilham v. Cambridge Home Health Care, Inc.*, 5th Dist. No. 2008 CA 00211, 2009-Ohio-2842, ¶ 18 (appellant was a fixed-situs employee when, although she traveled to the homes of two separate clients in one day, she commenced her substantial job duties when arriving at each home and ended the duties upon leaving); *Smith v. Akron*, 9th Dist. No. 22101, 2004-Ohio-4974,

¶ 12 (a landscaper was a fixed-situs employee when he traveled to two separate locations in one day, which were both fixed locations); *Brown v. Lake Erie Elec. Co.*, 12th Dist. No. CA2010-04-030, 2010-Ohio-4950, ¶ 16 (finding a "journeyman electrician" to be a fixed-situs employee when he reported to a designated job location to perform his work). The main factor in determining whether an employee who travels to several different locations in a day is a fixed-situs employee is whether the employee reports to a fixed location on a given day. *Id.* In the present case, because appellant travelled to one or more fixed locations on a given day to apply the waterproofing paint rendered him a fixed-situs employee as contemplated in *Ruckman*.

{¶ 16} A fixed-situs employee is generally not entitled to participate in the workers' compensation fund because a causal connection does not exist between his injury and his employment to satisfy the "arising out of" requirement. *Id.* at 119, citing *MTD Prods.* at 68. However, there are exceptions under which the employee may demonstrate the causal connection to satisfy the "arising out of employment" prong. Accordingly, the coming-and-going rule does not operate as a complete bar to an employee commuting to and from work in instances where: (1) the injury occurs within the "zone of employment"; (2) the employment creates a "special hazard"; (3) there is a causal connection between the employee's injury and employment based on the "totality of the circumstances" surrounding the accident; and (4) the injury occurred while the employee was on a special mission, errand, service or task for the employer.

{¶ 17} The first exception to the rule allows an employee to recover from an injury that occurred within the "zone of employment," which has been defined as "the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, under control of the employer." *Merz v. Indus. Comm.*, 134 Ohio St. 36, 39 (1938). This zone "is not a fixed area, rather, its relative limits or expansion must be determined 'from the logical and close association of the surrounding area to the premises of employment, together with the particular circumstances and hazards existing in relation thereto.' " *Berry v. G.C. Murphy Co.*, 6th Dist. No. L-81-o49 (Oct. 2, 1981), quoting *Frishkorn v. Flowers*, 26 Ohio App.2d 165, 169 (8th Dist.1971). The issue as to "[w]hether or not the employee's injuries are suffered in the 'zone of employment'

depends on the specific facts and circumstances of each case." *Custard v. First Natl. Bank*, 6th Dist. No. S-97-o58 (June 5, 1998).

{¶ 18} The "special-hazard" rule allows an employee to collect workers' compensation benefits when the employment creates a special hazard and the employee's injury results from that hazard. *See MTD Prods.* at 68; *Powers v. Frank Z Chevrolet*, 100 Ohio App.3d 718, 721 (2d Dist.1995). This rule is applicable when (1) "but for" the employment, the employee would not have been at the location where the injury occurred, and (2) the risk is distinctive in nature or quantitatively greater than the risk common to the public. *Id.*

{¶ 19} Under the third exception to the coming-and-going rule, an employee can receive workers' compensation benefits if there is a causal connection between the employee's injury and employment based on the "totality of the circumstances" surrounding the accident. The factors relevant to this exception are "(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *MTD Prods.* at 70.

{¶ 20} The fourth exception to the coming-and-going rule is the special mission exception. The special mission exception was discussed in *Pierce v. Keller*, 6 Ohio App.2d 25 (3d Dist.1966). In that case, the court explained that the special mission exception exists when the injury is sustained by the employee while performing a special task, service, mission, or errand for his employer, even before or after customary working hours, or on a day on which he does not ordinarily work. *Id.* at 29. For the exception to arise, the mission must be the major factor in the journey or movement, not merely incidental thereto, and the mission must be a substantial one. *Id.*

{¶ 21} In the present case, appellant contends that reasonable minds could differ as to whether the second exception, the special hazard rule; the third exception, the totality-of-the-circumstances exception; and the fourth exception, the special mission exception, apply. With regard to the special hazard rule, appellant contends that reasonable minds could find that the very nature of Bone Dry's business required its employees to travel in a manner greater than the general public. As indicated above, the special hazard rule is applicable when (1) "but for" the employment, the employee would

not have been at the location where the injury occurred, and (2) the risk is distinctive in nature or quantitatively greater than the risk common to the public. Because we find the risk here is not distinctive in nature or quantitatively greater than the risk common to the public, we will address that factor first. The Supreme Court's decision in *Ruckman* is instructive. In *Ruckman*, the employees were drilling riggers who travelled from work site to work site and had been injured while driving thereto. The Supreme Court found that multiple factors worked in combination to make travel to the temporary drilling sites a special hazard of employment, including the temporary nature of the job locations, the constant change in locations, and the distance the riggers commuted to the remote work sites, which were spread over a three-state area. The court found these distances were not in line with work commutes common to the public. The court noted that, for most employees, commuting distance to a fixed work site was largely a personal choice, any increased risk due to a longer commute was more due to the employee's choice of residence, and the risk associated with highway travel is not distinctive in nature from those faced by the general public. However, the Supreme Court concluded that the employees' interstate and intrastate commutes in *Ruckman* were lengthy and increased their exposure to traffic risks associated with highway travel.

{¶ 22} In the present case, appellant's job locations were temporary and subject to constant change, like the employees' job locations in *Ruckman*; however, appellant's job location on the date in question was in Powell. *See Palette* (to qualify under the special-hazard exception, the focus is on the risk created by the employee's traveling to the work site on the date of the accident and not to the employee's general travel requirements). The travel between Powell and appellant's Columbus home is between 30 to 45 minutes. The houses that appellant had to service that day were all within the same subdivision. Clearly, appellant's work sites in Powell were not remote and did not require him to travel an extraordinary distance or travel over a three-state area, like the employees in *Ruckman*. The present circumstances do not resemble the extraordinary travel at issue in *Ruckman*. *See Barber* at 273 (*Ruckman* is limited to those extreme circumstances). Thus, we find appellant's traveling in the present case was moderate, not unusual for a work commute, and put him at no greater risk of injury than that faced by the general public. Reasonable minds could only conclude that the common public assumed the same risks in

highway work commutes. Therefore, viewing the evidence most strongly in favor of appellant, there remains no genuine issue of material fact as to whether appellant's work duties on the day in question created a special hazard. Given this finding, we need not address the "but-for" factor of the special hazard rule.

{¶ 23} With regard to the totality-of-the-circumstances exception, appellant argues that waterproofing, by its very nature, required the work to be done at the customer's site; thus, travel was a necessary promotion and furtherance of Bone Dry's business interests. Appellant also asserts that by assigning appellant three jobs on his day off, Bone Dry knew that he would need to return home to get the paint brushes to further Bone Dry's interests. Appellant also contends that Bone Dry received a benefit by his travelling to his house to retrieve the paint brushes because he would save money for Bone Dry by reusing the paint brushes he stored in a bucket of water at his home.

{¶ 24} Although we agree with appellant that it could be reasonably viewed that Bone Dry would receive a benefit from appellant returning to his house to retrieve the paint brushes necessary for the job, the location of the accident was not near either Bone Dry's offices or appellant's eventual job location in Powell, and Bone Dry had no control over the scene of the accident or the route appellant drove. Thus, we find reasonable minds could not conclude that the totality-of-the-circumstances exception applies in the present case.

{¶ 25} With regard to the special mission exception, appellant argues that reasonable minds could find that his travel back to his house to get necessary supplies, after receiving an unplanned job assignment on his day off, constituted a special mission. We disagree. For the exception to arise, the mission must be the major factor in the journey or movement, and not merely incidental thereto, and the mission must be a substantial one. *Pierce* at 20. Furthermore, when the employee chooses the route, time, and means of transportation in travelling from his home to his place of employment and those factors are under his control, any injuries that arise in carrying out the employer's instructions are a result of hazards that are similarly encountered by the public generally and are not a result of exposure occasioned by the nature, conditions, or surroundings of his employment. *Id.* at 29-30.

{¶ 26} In the present case, we find no reasonable minds could find appellant's actions fell within the special mission exception. Importantly, at the time of the accident, appellant was not actually engaged in any special task, mission, or errand. He was merely traveling to his house to get equipment before continuing to his job site. In other words, appellant was not carrying out any special mission *while* he was driving home. *See Seese v. Admr., Bur. Workers' Comp.*, 11th Dist. No. 2009-T-0018, 2009-Ohio-6521, ¶ 42 (employee failed to demonstrate he qualified under the "special mission" exception, pursuant to *Pierce*, because employee was not performing any task, mission, or errand for his employer when he sustained his injury; he was merely driving to work, albeit on a day he did not ordinarily work, in response to his employer's urgent need; there was no special mission employee was carrying out while he travelled to work; commuting to work on a day not regularly scheduled does not constitute a special mission). *See also Wining v. Unique Ventures Group, LLC*, 7th Dist. No. 10 MA 111, 2011-Ohio-2474, ¶ 24 (finding a special mission when the sole reason for the restaurant employee travelling on the road on the evening in question was to deliver keys to the restaurant manager so that she could lock the restaurant). Therefore, we find reasonable minds could only conclude that the special mission exception did not apply here.

{¶ 27} For these reasons, we find that appellant was a fixed-situs employee subject to the coming-and-going rule and was not entitled to participate in the workers' compensation fund. Therefore, the trial court did not err when it granted summary judgment to Bone Dry, and appellant's first, second, third, and fourth assignments of error are overruled.

{¶ 28} Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER, J., concurs.
TYACK, J., dissents.

TYACK, J., dissenting.

{¶ 29} I respectfully dissent.  As noted above, Mark Cunningham is appealing from a ruling in the Franklin County Court of Common Pleas which denied him the right to

participate in Ohio's Workers' Compensation system for injuries he incurred on May 2, 2013. He assigned four errors for our consideration.

{¶ 30} Cunningham was affiliated with Bone Dry Waterproofing, Inc. ("Bone Dry") when he was injured in a motor vehicle accident. He applied for workers' compensation benefits, but Bone Dry resisted his efforts to participate, even to the point of asking for a jury trial on his right to participate after Bone Dry had lost at all administrative levels of the Industrial Commission.

{¶ 31} Once the case was pending in common pleas court, Bone Dry requested summary judgment arguing Cunningham was not an employee of Bone Dry, but an independent contractor. Bone Dry had argued this theory at the administrative levels of the Industrial Commission, but had had that argument consistently rejected. Bone Dry argued before the common pleas court that even if Cunningham was an employee, his injuries did not occur in the course of or arising out of his employment with Bone Dry.

{¶ 32} The trial court felt the parties had not adequately briefed the issue of employee versus independent contractor and, therefore, did not grant summary judgment as to that issue.

{¶ 33} The trial court found that Cunningham was "an employee with a fixed place of employment" and then proceeded to address the applicability of the "coming-and-going rule." The trial court's view of the facts were that Cunningham had just received a new assignment of a work location in Powell, Ohio, from Bone Dry. Cunningham then began driving toward home to pick up the paint brushes needed for the job. He was then to drop his brother off before proceeding to the location of the new assignment. The fact that Cunningham had been assigned to a specific location to do his next work for Bone Dry led the trial court to find that Cunningham was a fixed-situs employee.

{¶ 34} The trial court felt that the fact that Cunningham could have gotten paint brushes from Bone Dry's headquarters took him out of the benefit of the coming-and-going rule. The trial court also indicated that since the injuries were the result of another vehicle slamming into Cunningham's truck, the injuries did not arise out of his employment. The trial court indicated that it made its ruling based upon the totality of the circumstances.

{¶ 35} A totality of the circumstances analysis is rarely consistent with the granting of summary judgment. A trial court judge is required to construe the contested facts most strongly in favor the nonmoving party. If there are material facts before the trial court which indicate that summary judgment may not be appropriate, the trial court has to overrule the motion for summary judgment.

{¶ 36} Counsel for Bone Dry argues that no material facts were in dispute. Counsel submits that no special hazard or mission applied to "Cunningham's traveling on public roads, miles from his job assignment, in the process of taking his brother home, before commencing his actual travel to his work assignment." Counsel asserts that Cunningham was barred from participating in the workers' compensation system by R.C. 4123.01(C), which reads:

> "Injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.

{¶ 37} Counsel acknowledges that Cunningham routinely drove his personal vehicle when going to job sites to do work for Bone Dry. The new work location in this case was in Powell, Ohio, in Delaware County. Cunningham received the job assignment while present at the offices of Bone Dry on Outerbelt Street on the east side of Columbus. Paint was provided by Bone Dry immediately before he left the headquarters offices. Cunningham was on the way to his home to acquire paint brushes provided by Bone Dry, but stored at Cunningham's home when the collision occurred. Cunningham's brother also was in the truck, having not been delivered home yet. The presence of Cunningham's brother had no effect on the route between Bone Dry's headquarters and Cunningham's home. The wreck occurred in the south end of Columbus, not directly between the offices of Bone Dry and the Delaware County work site. A supervisor at Bone Dry was aware that the brother needed to be taken home before the work in Powell commenced.

{¶ 38} Distilling these facts, Cunningham was on the way to his house to get company paint brushes to use with the company paint to do the company paint job in Delaware County. Cunningham was proceeding from the company offices to the place he kept some of the company equipment when the collision occurred. Cunningham had not yet deviated from the course of travel planned to take himself home to get the company

equipment. His brother's presence in the truck had nothing to do with the route or collision, and thus nothing to do with the injuries being suffered.

{¶ 39} Cunningham was not paid for travel time, but he was paid for travel expenses, such as fuel and wear and tear on his truck. Cunningham was paid $50 per paint job. I note again that Cunningham's brother was with Cunningham at company headquarters when Cunningham accepted the job in Delaware County. Thus, Bone Dry was on notice that the brother had to be taken home before Cunningham could proceed to Delaware County to do the painting. In short, Cunningham had to make the trip to his brother's home to free Cunningham up to do the work assigned.

{¶ 40} Given the facts set forth above, genuine issues of material fact existed. The trial court should have overruled the motion for summary judgment, as explained in more detailed below.

{¶ 41} The first assignment of error addresses the issues of whether Cunningham was a fixed-situs employee. The trial court interpreted *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117 (1998), to mandate that Cunningham be considered a fixed-situs employee. The two paragraphs of the syllabus read:

> 1. In determining whether an employee is a fixed-situs employee and therefore within the coming-and-going rule, the focus is on whether the employee commences his or her substantial employment duties only after arriving at a specific and identifiable work place designated by his employer. That focus remains the same even though the employee may be reassigned to a different work place monthly, weekly, or even daily. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment.
>
> 2. A fixed-situs employee is entitled to workers' compensation benefits for injuries occurring while coming and going from or to his place of employment where the travel serves a function of the employer's business and creates a risk that is distinctive in nature from or quantitatively greater than risks common to the public. (Littlefield v. Pillsbury Co. [1983], 6 Ohio St.3d 389, 6 OBR 439, 453 N.E.2d 570, paragraphs one and two of the syllabus, limited and modified.)

{¶ 42} I feel there is a genuine issue of material fact under each paragraph of the syllabus. A trier of fact could find that a significant or substantial part of Cunningham's duties as a painter included acquiring the paint and paint brushes necessary for him to do

painting.  Thus, Cunningham could be found to have commenced substantial employment duties when he started to go directly from Bone Dry headquarters to his home to acquire Bone Dry's paint brushes.  Thus, he could be found not to be a fixed-situs employee.

{¶ 43} Further, the storing of Bone Dry's paint brushes previously used allowed Bone Dry to save money on the cost and purchase of paint brushes.  Thus, Bone Dry received a benefit.

{¶ 44} Finally, the more a person drives in a major metropolitan area, the greater the risk of bad things happening.  Whether the risk is quantitatively greater than risks to the public is an analysis to be made only if the trier of fact finds Cunningham to be a fixed-situs employee under the terms of paragraph one of the syllabus of *Ruckman*.

{¶ 45} In light of the above, the first, second, and fourth assignments of error should be sustained.

{¶ 46} Also, in light of the above, I believe that a trier of fact could find that travel was a fundamental part of Cunningham's job duties.  Once he received an assignment to do painting, he had to travel to the place to be painted.  Bone Dry paid expenses related to the travel.

{¶ 47} As indicated in *Ruckman*, an employee who travels to the premises of a customer of the employer generally serves a purpose of the employer's business.  *Id.* at 121.  Just as the riggers in *Ruckman* were promoting the rigger part of the business of Cubby Drilling, Inc., the painters for Bone Dry were furthering Bone Dry's business when they went to paint buildings served by Bone Dry.

{¶ 48} The third assignment of error should also be sustained.

{¶ 49} Since the majority of the panel does not vacate the summary judgment in this case, I respectfully dissent.

———————————