[Cite as *Hicks v. Safelite Group, Inc.*, 2021-Ohio-3044.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Shalonda Hicks, | : | |
| Plaintiff-Appellant, | : | No. 20AP-136 |
| | | (C.P.C. No. 19CV-1007) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Safelite Group, Inc., et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 2, 2021

**On brief:** *The Ivan Law Firm*, and *Katherine E. Ivan*, for appellant. **Argued:** *Katherine E. Ivan.*

**On brief:** *Thomas & Company, L.P.A., J. Michael Reidenbach,* and *Abigail I. Marchisio*, for appellee Safelite Group, Inc. **Argued:** *Abigail I. Marchisio.*

**On brief:** *Dave Yost*, Attorney General, and *Natalie J. Tackett*, for appellee Ohio Bureau of Workers' Compensation.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Shalonda Hicks, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Safelite Group, Inc. ("Safelite"). For the following reasons, we reverse and remand.

**I. Facts and Procedural History**

{¶ 2} In February 2018, Hicks was employed with Safelite as a licensed insurance adjuster. She worked from a desk at Safelite's leased office building at 2400 Farmers Drive, in Columbus, Ohio. The performance of her duties as an adjuster did not require her to

travel. Safelite leased the property from F.I.G. Holding Company for commercial use pursuant to a lease agreement. The lease began on January 1, 2014, and is effective until December 31, 2025. Pursuant to the lease agreement, Safelite has use of approximately 178,052 square feet, or 97.57 percent of the rentable area of the building. "Common areas" of the premises include the building lobby, common corridors and hallways, restrooms, and the adjacent parking lot. The lease states Safelite has the "right to use, free-of-charge * * * all parking spaces in the surface parking area serving the Building other than" eight specified spaces located at the side of the building. (Office Building Lease, filed in support of Def.'s Nov. 7, 2019 Mot. for Summ. Jgmt.) F.I.G. Holding Company is responsible for repairing and maintaining the common areas of the leased premises, including the parking lot.

{¶ 3} During the morning of February 8, 2018, Hicks drove approximately 40 minutes to work at 2400 Farmers Drive. Hicks was in her third trimester of pregnancy at the time, and there had been a snowstorm the previous night. When she arrived, she parked her car in one of the five or six designated third trimester expectant mother parking spaces in the lot adjacent to the building. Hicks placed her expectant mother parking permit on her car's rear-view mirror. She received the parking permit from Safelite's human resources department, and the permit itself instructed its holder to return it when it was no longer necessary for the mother. Hicks had looked forward to receiving the permit because the reserved spaces were closer to the building's entrance, and oftentimes the Safelite parking lot was at or near its capacity. Previously, at her employment orientation, Hicks provided her license plate information to Safelite and was informed where she could park as a Safelite employee. She was also instructed that Safelite employees should park in Safelite's lot, and they were not permitted to park in the lot serving the comparably sized office building located next to the one Safelite leased. As Hicks stepped onto the sidewalk in her walk to the building's entrance, she slipped and fell to the ground. She alleges that, as a result of the fall, she sustained injuries to her left hip and lower back.

{¶ 4} In June 2018, Hicks filed a claim for benefits with the Ohio Bureau of Workers' Compensation. In August 2018, an Ohio Industrial Commission ("commission") district hearing officer disallowed the claim in its entirety. Hicks appealed, and the matter

was heard before a commission staff hearing officer in September 2018, who also disallowed the claim in its entirety. Hicks appealed, and the commission denied the appeal.

{¶ 5} In January 2019, and pursuant to R.C. 4123.512, Hicks filed an appeal in the trial court alleging her right to participate in the workers' compensation fund. In November 2019, Safelite moved for summary judgment pursuant to Civ.R. 56(B), asserting Hicks' alleged injuries did not occur "in the course of" and "arise out of" her employment with Safelite. In January 2020, the trial court granted Safelite's summary judgment motion.

{¶ 6} Hicks timely appeals.

## II. Assignments of Error

{¶ 7} Hicks assigns the following errors for our review:

> [1.] The trial court erred when granting summary judgment because Ms. Hicks meets the "totality of the circumstances" exception to the coming and going rule because it considered the lack of control and not the other factors of the exception.

> [2.] The trial court erred when granting summary judgment because Ms. Hicks meets the "zone of employment" exception to the coming and going rule because control is only one factor of this exception.

## III. Discussion

{¶ 8} Hicks' first assignment of error alleges the trial court erred in granting summary judgment in Safelite's favor because she meets the "totality of the circumstances" exception to the "coming-and-going" rule. In her second assignment of error, she alleges the trial court erred in granting summary judgment in Safelite's favor because she meets the "zone of employment" exception to the "coming-and-going" rule.

{¶ 9} Generally at issue is whether the trial court properly granted summary judgment in Safelite's favor. An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the

evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 10} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 11} Hicks alleges she is entitled to participate in the workers' compensation fund. For the purpose of Ohio's Workers' Compensation Act, R.C. Chapter 4123, "[i]njury" is generally defined as "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). Thus, for an employee's injury to be compensable under Ohio's workers' compensation system, the injury must be both (1) received in the course of, and (2) arising out of, the injured employee's employment. *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 142 Ohio St.3d 425, 2014-Ohio-4531, ¶ 12. There must be a sufficient nexus " 'between the employment relationship and the injurious activity.' " *Cunningham v. Bone Dry Waterproofing, Inc.*, 10th Dist. No. 15AP-587, 2016-Ohio-3341, ¶ 9, quoting *Ruckman v. Cubby Drilling, Inc.,* 81 Ohio St.3d 117, 120 (1998). While workers' compensation statutes should be liberally construed in favor of employees, the employee bears the burden of establishing both prongs of this statutory requirement. *Starkey v. Builders Firstsource Ohio Valley, L.L.C.*, 130 Ohio St.3d 114, 2011-Ohio-3278, ¶ 17, citing R.C. 4123.95; *Fisher v. Mayfield*, 49 Ohio St.3d 275, 279 (1990).

{¶ 12} It is undisputed that Hicks was a fixed-situs employee. "As a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his

place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist." *MTD Prods., Inc. v. Robatin*, 61 Ohio St.3d 66 (1991), syllabus. This rule, often referred to as the "coming-and-going" rule, has the following exceptions: "(1) the injury occurs within the 'zone of employment'; (2) the employment creates a 'special hazard'; (3) there is a causal connection between the employee's injury and employment based on the 'totality of the circumstances' surrounding the accident; and (4) the injury occurred while the employee was on a special mission, errand, service or task for the employer." *Cunningham* at ¶ 16; *Bralley v. Daugherty*, 61 Ohio St.2d 302, 303 (1980). Hicks acknowledges that the "special hazard" and "special mission" exceptions do not apply. She contends both the "zone of employment" and "totality of the circumstances" exceptions apply.

{¶ 13} Because the essential facts are undisputed, the applicability of the exceptions to the coming-and-going rule present questions of law. *Mangan v. Texas Roadhouse Mgt. Corp.*, 10th Dist. No. 20AP-42, 2021-Ohio-2201, ¶ 18. We first address the "zone of employment" exception, which has been defined as " 'the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, under control of the employer. ' " *Cunningham* at ¶ 17, quoting *Merz v. Indus. Comm.*, 134 Ohio St. 36, 39 (1938). This zone "is not a fixed area, rather, its relative limits or expansion must be determined from the logical and close association of the surrounding area to the premises of employment, together with the particular circumstances and hazards existing in relation thereto." (Citations omitted.) *Id.* Application of this exception depends on the specific facts and circumstances of each case. *Id.* For example, in *Baughman v. Eaton Corp.*, 62 Ohio St.2d 62, 63 (1980), the Supreme Court of Ohio found that the claimant employee was entitled to workers' compensation benefits for injuries sustained from his fall on a public street as he walked from the employer's parking lot to the employer's factory. The court reasoned: "Appellee parked his automobile in the only employer parking lot then available to him free of charge. His injuries occurred on the public street as he proceeded, without deviation, toward the plant entrance prior to the commencement of his shift. Finally, appellee could not reach the plant entrance without crossing the public street. On these facts, it would be unreasonable to deny appellee compensation." *Id.* The employee in

*Baughman* effectively had "arrived at his place of employment" when he was injured. *MTD Prods., Inc.* at 69, citing *Baughman*.

{¶ 14} "The zone of employment has been extended beyond the employer's immediate premises in a number of situations, most of which involve parking lots over which the employer has some control, and it has also been extended to the public road providing access to the employer's premises." *Lemming v. Univ. of Cincinnati*, 41 Ohio App.3d 194, 195 (1st Dist.1987). As to an injury occurring in a parking lot adjacent to a work situs, the Supreme Court of Ohio has held: "An employee who, on his way from the fixed situs of his duties after the close of his work day, is injured in a collision of his automobile and that of a fellow employee occurring in a parking lot located adjacent to such situs of duty and owned, maintained and controlled by his employer for the exclusive use of its employees, receives such injury 'in the course of, and arising out of' his employment, within the meaning of that phrase in the Work[ers'] Compensation Act, Section 4123.01(C), Revised Code." *Marlow v. Goodyear Tire & Rubber Co.*, 10 Ohio St.2d 18 (1967), syllabus. Further, in *Griffin v. Hydra-Matic Div., Gen. Motors Corp.*, 39 Ohio St.3d 79 (1988), the employee "had completed her employment for the day" and "slipped and fell on a wet or icy spot" while "traversing a driveway between the plant of appellant and its parking lot." *Id.* at 79. The court held that "an injury sustained by an employee upon the premises of her employer is compensable pursuant to R.C. Chapter 4123 irrespective of the presence or absence of a special hazard thereon which is distinctive in nature or quantitatively greater than hazards encountered by the public at large." *Id.* at 82.

{¶ 15} Safelite argues this court's decision in *Thephasith v. Automotive Specialty Co. Div.*, 10th Dist. No. 00AP-415, 2000 Ohio App. LEXIS 5300 (Nov. 16, 2000), mandates a finding that the zone of employment exception does not apply. In *Thephasith*, the plaintiff's employer had leased a 26,000 square foot building at the Alum Creek Industrial Park. The lease provided that the employer could use a parking lot located at the industrial park and owned by the landlord. The plaintiff was struck by another employee's automobile as he walked to his own automobile in that parking lot. Pursuant to the lease, the landlord was responsible for the condition and repair of the parking lot, and the employer "had the 'non-exclusive right to use of the parking and driveway areas.' " *Id.* The parking lot "was available to other tenants in the Industrial Park and to members of the public." (Internal

quotation omitted.) *Id.* In addressing the plaintiff's contention that he was injured while within the zone of employment, this court noted that the employer "presented evidence that it did not own, maintain, or have control over the parking lot where appellant was injured. Appellee also presented evidence that appellant was not engaged in any activities relating to his employment except for the fact that he was walking to his car at the end of his workday." *Id.* This court found "these facts sufficiently establish that appellant was not within the 'zone of employment' when he was injured, and, therefore, he is not eligible for benefits pursuant to the 'zone of employment' test." *Id.* Safelite argues *Thephasith* is right on point because Hicks' slip and fall occurred in a parking lot Safelite does not own, maintain, or control, and Hicks was not engaged in any activities relating to her employment when she fell. We are unpersuaded and find Hicks was in the zone of employment when she slipped and fell.

{¶ 16} First, we do not interpret *Thephasith* to hold that, for an injury to be covered, the employee must be actively engaged in his employment duties. The zone of employment test does not include such a requirement. *See Ruckman* at 120 (entitlement to workers' compensation coverage is not contingent on the injury occurring in the actual performance of work duties).

{¶ 17} Second, we find *Thephasith* to be distinguishable on the issue of control. Unlike the employer in *Thephasith*, Safelite exerted control over the parking lot where Hicks slipped and fell. Despite Safelite not owning the parking lot, it demonstrated control by generally limiting usage of the parking lot serving the building it leased, and by further restricting usage of certain parking spaces in that lot. The lease agreement states: Safelite "shall have the non-exclusive right (unless otherwise provided herein) in common with Landlord, other tenants, subtenants and invitees to use the Common Areas," which includes the "parking area serving the [b]uilding." (Office Building Lease, filed in support of Def.'s Nov. 7, 2019 Mot. for Summ. Jgmt.) Even though the lease agreement identified the parking lot adjacent to the building as a "common area," Safelite had the right to use almost the entire parking lot as it leased over 97 percent of the 182,487 square feet of total rentable area of the five-story office building. There was no evidence of any intent of the parties to the lease agreement that this area would serve any purpose other than constituting the parking lot for the leased building. Consistent with these circumstances,

Safelite collected employee license plate information, reflecting an effort to regulate and limit parking in the lot. Additionally, the evidence demonstrated that Safelite restricted the use of five or six prime spaces in the parking lot for expectant mothers in their third trimester. On the day of her slip and fall, Hicks, with the required permit displayed on her car, parked in one of those spaces. Thus, the record reflects Safelite exerted a degree of control over the parking lot and in particular the reserved space Hicks used immediately before her slip and fall.

{¶ 18} We further note that while Safelite did not own the parking lot adjacent to the building it leased, employer ownership of a parking lot, which is the site of the accident, is not a prerequisite to coverage. *Fitch v. Ameritech Corp.*, 10th Dist. No. 05AP-1277, 2007-Ohio-2725, ¶ 17, citing *Jesse v. May Dept. Stores Co.*, 11th Dist. No. 2003-L-064, 2004-Ohio-5313, ¶ 29 ("Ohio courts have found that the 'zone of employment' exception may be satisfied when an employer leases the parking lot where an employee was injured."). The lot was, in a practical sense, an integral aspect of Safelite's operations at the location as the lot served the parking needs of its employees. There was no evidence presented of another viable parking option for employees like Hicks who commuted to the building location. Although the evidence demonstrated the presence of a comparable office building next to the one Safelite leased, with its own sizeable parking area, Hicks was specifically instructed not to park in the lot serving the sister building. She was directed to park in the Safelite lot. Thus, the parking area was Hicks' "normal and customary means to and from [her] employer's premises to which such passageway was an indispensable appurtenance." *Frishkorn v. Flowers,* 26 Ohio App.2d 165, 168 (8th Dist.1971) ("this was tantamount to an essential expansion of [its] premises for the purpose of adequately serving and furthering [its] business interests"). Moreover, even though the lessor, F.I.G. Holding Company, was directly responsible for maintaining the parking lot under the terms of the lease agreement, Safelite, as the lessee, had the legal authority to ensure F.I.G. Holding Company was fulfilling this obligation for the benefit of Safelite's employees.

{¶ 19} Under the particular facts of this case, we conclude that, as a matter of law, Hicks was within the zone of employment when she slipped and fell in the parking lot adjacent to Safelite's leased office building. Consequently, Hicks' alleged injuries arose out

of, and in the course of, her employment, and the trial court erred in determining Hicks is not entitled to participate in the workers' compensation fund.

{¶ 20} For these reasons, we sustain Hicks' second assignment of error. This disposition renders moot her first assignment of error.

## IV. Disposition

{¶ 21} Having sustained Hicks' second assignment of error, and finding as moot her first assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed;*
*cause remanded.*

MENTEL and NELSON, JJ., concur.

NELSON, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).