OPINION
{¶ 1} Defendant-appellant, William R. Hague, Inc. ("Hague"), appeals from the judgment of the Franklin County Court of Common Pleas, which granted summary *Page 2 
judgment in favor of plaintiff-appellee, Rodney W. Lippolt ("Lippolt"), regarding Lippolt's entitlement to participate in the Ohio Workers' Compensation Fund. For the following reasons, we affirm.
 {¶ 2} Since 1999, Hague has employed Lippolt as a regional manager/factory representative, whose job functions include training, checking on product presentation, public relations, and being Hague's "eyes and ears" in the field with respect to Hague's water products. Although Lippolt lives in Illinois, Hague hired Lippolt in Ohio to perform work in Illinois and other states. Lippolt's job duties require him to be in Illinois one week and on the road the next. During his weeks in Illinois, Lippolt completes administrative work from home and visits stores selling Hague products in Illinois. Every other week, Lippolt is on the road visiting stores throughout his territory, which, in addition to Illinois, includes Iowa, Minnesota, Nebraska, North Dakota, South Dakota, Wisconsin, Kansas, and Missouri.[1] Lippolt visits stores within his territory on a rotational basis and is required to visit each store in his territory during a specific period of time. For example, Lippolt is required to visit each of the 30 Mills Fleet and Farm stores in his territory once per month. Hague does not generally set Lippolt's travel itinerary. Except on rare occasions, Lippolt determines which states and stores he will visit during each week on the road.
 {¶ 3} Hague provides Lippolt with a company credit card for airline tickets, car rentals, gasoline, and hotels. Lippolt turns in a weekly expense report detailing meals, tolls, and miscellaneous business expenses, for which Hague reimburses him. Hague does not require Lippolt to stay at particular hotels or motels during his travels. *Page 3 
 {¶ 4} On Sunday, February 19, 2006, in preparation for a week on the road, Lippolt drove a rental car from his home in Illinois to Davenport, Iowa, where he spent the night in a motel. On the morning of February 20, 2006, Lippolt visited stores in Davenport, Iowa; Moline, Illinois; Kewanee, Illinois; and Sterling, Illinois. After lunch, Lippolt visited stores in Freeport, Illinois; Debuque, Iowa; and Waterloo, Iowa. Lippolt finished his final store visit between 5:00 and 5:30 p.m. While in Waterloo, Lippolt telephoned to reserve a hotel room for the evening at a Comfort Inn in Mason City, Iowa, near the first store he planned to visit the next morning. Lippolt then drove one and a half to two hours to Mason City and arrived at the hotel between 7:00 and 7:30 p.m. Lippolt parked and exited his rental car. While walking toward the hotel lobby to check in, he slipped and fell on ice in the parking lot, fracturing his left ankle.
 {¶ 5} Lippolt filed an Ohio workers' compensation claim, asserting that the injury he sustained on February 20, 2006, was received in the course of, and arising out of, his employment. The Ohio Bureau of Workers' Compensation denied Lippolt's claim in an order dated April 10, 2006. Lippolt appealed, and a district hearing officer of the Industrial Commission of Ohio allowed Lippolt's claim for a fracture of his left ankle. A staff hearing officer affirmed the allowance of Lippolt's claim. After the Industrial Commission refused further appeal, Hague filed a notice of appeal in the Franklin County Court of Common Pleas pursuant to R.C. 4123.512. As required by that statute, Lippolt filed a complaint in the trial court, asserting his entitlement to participate in the Workers' Compensation Fund.
 {¶ 6} On June 14, 2007, Lippolt filed a motion for summary judgment, arguing that no genuine issue of material fact existed and that, as a matter of law, he was *Page 4 
entitled to participate in the workers' compensation system for his February 20, 2006 injury. On June 22, 2007, Hague filed a cross-motion for summary judgment, arguing that, as a matter of law, Lippolt was not entitled to participate in the workers' compensation system. On January 22, 2008, the trial court issued a decision and entry granting Lippolt's motion for summary judgment and denying Hague's motion for summary judgment.
 {¶ 7} Hague appeals, asserting the following assignments of error:
 1. The trial court erred in granting [Lippolt's] Motion for Summary Judgment as [Lippolt] was not in the course of his employment at the time of his injury.
 2. The trial court erred in overruling [Hague's] Motion for Summary Judgment as reasonable minds could only conclude [Lippolt] did not sustain an injury in the course of his employment pursuant to R.C. 4123.01 et seq.
 3. Alternatively, the trial court erred in granting [Lippolt's] Motion for Summary Judgment as there is a genuine dispute of a material facts [sic] as to whether [Lippolt's] injury was suffered in the course of employment and this issue should be submitted to the trier of fact.
Because Hague's assignments of error all concern the trial court's disposition of the motions for summary judgment and, particularly, the issue of whether Lippolt was injured in the course of his employment, we address the assignments of error together.
 {¶ 8} We review a summary judgment de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; *Page 5 Brown at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. Coventry Twp. v.Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 9} Pursuant to Civ. R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, quotingNorris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 10} "The test of the right to participate in the Workers' Compensation Fund is not whether there was any fault or neglect on the part of the employer or his employees, but whether a `causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment."Bralley v. Daugherty (1980), 61 Ohio St.2d 302, 303. For purposes of the Ohio workers' compensation statutes, "`[i]njury' includes any injury, whether caused *Page 6 
by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). Thus, to be compensable under the Workers' Compensation Fund, an employee's injury must be received in the course of, and arising out of, his or her employment. Id.; Bralley at 303. The Ohio Supreme Court has expressly recognized the conjunctive nature of the coverage formula of "in the course of and arising out of" employment. Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 277. In applying the relevant statutory requirements, we remain mindful that the workers' compensation statutes should be liberally construed in favor of employees. R.C. 4123.95.
 {¶ 11} In their motions for summary judgment, the parties presented arguments regarding the applicability of the coming-and-going rule, which the Ohio Supreme Court has described as a tool to determine whether an employee's injury occurred in the course of and arose out of the employment relationship. See Ruckman v. Cubby Drilling, Inc. (1998),81 Ohio St.3d 117, 119. The coming-and-going rule provides that, "[a]s a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist." MTD Prods., Inc. v. Robatin (1991), 61 Ohio St.3d 66, 68, citing Bralley. The rationale for the rule is that the workers' compensation statutes contemplate only hazards encountered in the discharge of employment duties and not hazards or risks, such as travel to and from the place of employment, that the general public similarly encounters. Ruckman at 119, citing Indus. Comm. v. Baker (1933),127 Ohio St. 345, paragraph four of the syllabus. *Page 7 
 {¶ 12} In Ruckman, at 119-120, the Supreme Court stated that, to determine whether an employee is a fixed-situs employee and, thus, subject to the coming-and-going rule, the focus is on "whether the employee commences his substantial employment duties only after arriving at a specific and identifiable work place designated by his employer," even if that designated work place changes monthly, weekly or even daily. Whether the employment situs is fixed or non-fixed and, therefore, whether the coming-and-going rule applies to defeat compensation "depends upon whether the traveling itself was part of the employment, either by virtue of the nature of the occupation or by virtue of the contract of employment." Fletcher v. Northwest MechanicalContr, Inc. (1991), 75 Ohio App.3d 466, 473. The Fletcher court also acknowledged the existence of semi-fixed situs employment, in which the employee works for varying times and various sites, but held that the coming-and-going rule would not preclude compensation to a semi-fixed situs employee for whom travel was a necessary and required part of the employment.
 {¶ 13} "While the coming-and-going rule works well in most of its applications, a claimant may avoid its force * * * where he can, nevertheless, demonstrate that he received an injury in the course of and arising out of his employment." Ruckman at 120, citing MTDProducts. Although the trial court noted the parties' disagreement as to whether Lippolt was a non-fixed or semi-fixed situs employee, it did not decide that question because it concluded that Lippolt received his injury in the course of and arising out of his employment and, accordingly, found that the coming-and-going rule was not determinative and would not preclude compensation. Thus, we turn to the *Page 8 
threshold issue of whether Lippolt sustained his ankle injury in the course of and arising out of his employment.
 {¶ 14} The statutory requirement that an injury be in the course of employment relates to the time, place, and circumstances of the injury.Fisher at 277. An employee need not necessarily be injured in the actual performance of work for the employer to be entitled to workers' compensation. Rather, an injury is in the course of employment if sustained in activity that is consistent with the employee's contract of hire and that is logically related to the employer's business or incidental to the employment. Ruckman at 120, citing Kohlmayer v.Keller (1970), 24 Ohio St.2d 10, 12; Fisher at 278, fn. 1.
 {¶ 15} Ordinarily, the issue of whether an employee is acting within the course of employment is a question of fact. Saunders v. Holzer Hosp.Found., 176 Ohio App.3d 275, 2008-Ohio-1032, ¶ 15, citing Osborne v.Lyles (1992), 63 Ohio St.3d 326, 334. When the facts are undisputed, however, it becomes a question of law. Id. at 330. In the trial court, neither Lippolt nor Hague suggested that factual disputes precluded summary judgment. Upon review of the record, we find that the trial court appropriately determined that the facts underlying Lippolt's claim are undisputed and that whether Lippolt sustained his injury in the course of his employment was a question of law for the court.
 {¶ 16} Both the Ohio Supreme Court and Ohio appellate courts have addressed the "course of employment" issue with regard to employment situations, like Lippolt's, where an employee's job responsibilities require travel other than a commute to a fixed employment site. For example, the Supreme Court has stated that a traveling salesman is necessarily and "continuously in the discharge of his duties when he is traveling in his *Page 9 
allotted territory for the purpose of selling goods." Indus. Comm. v.Heil (1931), 123 Ohio St. 604, 606-607. The Supreme Court has also stated that persons employed as salesmen, servicemen or insurance adjusters:
 * * * [H]ave no fixed place of employment, their place of employment is the area they service, the very nature of their employment requires them to go from place to place over the public highways, and the traveling to each place to work is necessarily in the course of their employment. * * *
Lohnes v. Young (1963), 175 Ohio St. 291, 293.
 {¶ 17} In Pascarella v. ABX Air, Inc. (Aug. 10, 1998), Clinton App. No. CA98-01-002, quoting 2 Larson, Workers' Compensation Law, Section 25.00, 5-286 (1997), the Twelfth District Court of Appeals described the "traveling employee" doctrine, stating that "`[e]mployees whose work entails travel away from the employer's premises are * * * within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown.'" See, also,Duncan v. Ohio Blow Pipe Co. (1998), 130 Ohio App.3d 228, 236 (holding that a claimant's travel during his stay in California was in the course of his employment where he was in California at the direction of his employer as a condition of the employer's contract with its customer);Masden v. CCI Supply, Inc., Montgomery App. No. 22304, 2008-Ohio-4396
(holding that the claimant was a traveling employee who was in the course of his employment the entire time he was traveling except when he was on a personal errand and that the claimant was not on a personal errand while resting at his motel). This court has noted the "traveling employee" doctrine as a possible exception to the coming-and-going rule, but we have refused to adopt the doctrine as a means to find injuries compensable where the injuries occurred during an employment-related trip while the employee was *Page 10 
engaged in a purely personal errand. See Cline v. Yellow Transp.,Inc., Franklin App. No. 07AP-498, 2007-Ohio-6782, ¶ 17-18.
 {¶ 18} The Ohio Supreme Court has also recognized that, although an employee's commute to a fixed work site normally bears no meaningful relationship to his employment contract and serves no purpose of the employer's business, the general rule does not apply to an employee who travels to the premises of the employer's customers to satisfy a business obligation. See Ruckman. In Ruckman, the claimants were injured in traffic accidents en route from their homes to a remote drilling site on premises owned by their employer's customer. Although the claimants were fixed-situs employees because their workday began and ended at the drilling site and they had no duties to perform away from the drilling site, the court nevertheless found as follows:
 The nature of the rigging business requires that drilling be done on a customer's premises. That is a necessary condition of the work contract. * * * Consequently, while coming to and going from a customer's premises, these employees are engaged in the promotion and furtherance of their employer's business as a condition of their employment. Accordingly, their travel is in the course of their employment.
Id. at 121.
 {¶ 19} It is undisputed that travel was an essential part of Lippolt's job. Thus, in its motion for summary judgment, Hague conceded that Lippolt's injury would likely be compensable had it occurred between the time that Lippolt visited his first and last stores of the day and that Lippolt could similarly argue that his injury was compensable if it had occurred during his travel to his first store or from his last store of the day. We agree. Hague argues, however, that Lippolt was no longer in the course of his employment at the time of his injury because he had arrived at his hotel and exited his *Page 11 
car. According to Hague, a finding that Lippolt remained in the course of his employment at the time of his injury would allow similarly situated employees to recover for injuries sustained at any time and under any circumstances during business travel, including injuries sustained while an employee was engaged in a personal errand, disconnected from his employment. With that contention, we disagree.
 {¶ 20} This court, in Cline, recently considered a scenario in which a truck driver sought workers' compensation for injuries sustained when he was hit by an automobile while walking from his hotel to a restaurant during a federally mandated ten-hour rest period between runs. The driver argued that his injuries were compensable because he was "a `traveling employee' whose injuries always arise out of his employment while he is out of town between runs, so long as they are not sustained while he is on a purely personal errand." Id. at ¶ 17. During his rest period, the driver checked into a hotel with which his employer had arrangements for direct billing of room charges, and he slept for seven and a half hours before setting out on foot to a restaurant across the street from the hotel. During rest periods, drivers were only permitted to drive to a restaurant if there was no restaurant within walking distance from the hotel. Noting that we have refused to adopt the "traveling employee" doctrine with respect to injuries sustained while the traveling employee was engaged in a purely personal errand, we found the driver's dinner trip akin to a personal errand that did not benefit his employer or further his employer's business. Accordingly, we concluded that the driver was not entitled to participate in the workers' compensation system because his injury occurred in the course of a personal errand, not his employment. Our analysis in Cline clearly disposes of Hague's argument that the trial court's holding in this case would lead to *Page 12 
compensation for injuries sustained by traveling employees while engaged in personal entertainment, disconnected from their employment.
 {¶ 21} Other Ohio appellate courts have similarly found injuries sustained by traveling employees uncompensable when the claimant was on a personal errand at the time of the injury. See Roop v. CentreSupermarkets, Inc. (Apr. 24, 1987), Lucas App. No. L-86-206 (employee was not in the course of employment after visiting a nightclub upon the conclusion of his work-related convention schedule that ran from 7:00 a.m. until 11:00 or 11:30 p.m.); Marbury v. Indus. Comm. (1989),62 Ohio App.3d 786 (during an out-of-town conference, employee was not in the course of employment, but on a purely personal mission when she entered a souvenir shop at the end of a bus tour to buy a T-shirt for her daughter); Elsass v. Commercial Carriers, Inc. (1992),73 Ohio App.3d 112 (employees were not in the course of employment when, during off-duty time, they traveled from their motel in Alexandria, Virginia, into Washington, D.C., for food and "action"). But, see, Masden
(traveling employee remained in the course of employment while resting in his motel room).
 {¶ 22} In contrast to the scenarios in Cline and the other personal errand cases, we find that Lippolt's walk from his rental car into the hotel to check in was consistent with his employment and was not a personal errand. The nature of Lippolt's employment required him to engage in extensive interstate travel for a week at a time and required him to stay in hotels during his weeks on the road. Lippolt was in Mason City, Iowa, in accordance with the requirements of his employment contract and in furtherance of Hague's business. As a condition of his employment, Lippolt was required to visit each of the Hague accounts for which he was responsible on a periodic *Page 13 
schedule, and his days on the road involved visiting multiple stores, often in multiple states. Hague clearly anticipated that Lippolt would need to stay in hotels and, accordingly, paid for all of Lippolt's travel expenses, including his hotel rooms and meals. Lippolt's job responsibilities encompassed not only his store visits and his travel to, from, and between stores, but also that he stay in hotels during his weeks on the road to maximize the number of Lippolt's store visits. Unlike cases where claimants on business trips, after checking into their hotel rooms, were injured after later departing to seek food or entertainment, Lippolt was just arriving at his hotel, having driven directly from his final store visit of the day. We reject Hague's argument that Lippolt's course of employment terminated when he arrived in the hotel parking lot and exited his vehicle. Lippolt's act of parking his rental car and walking toward his hotel was no more a personal errand than his travel between stores, and we discern no logical basis for determining that one was within the course of Lippolt's employment while the other was not.
 {¶ 23} Hague also argues that Lippolt's injury did not occur in the course of his employment because it occurred two hours after Lippolt left his final store for the day and after Lippolt's required work hours of 8:00 a.m. to 5:00 p.m. Although Lippolt's supervisor, Rex Wickline, stated in an affidavit that Hague does not require Lippolt to work outside of regular business hours of 8:00 a.m. to 5:00 p.m., there is no evidence that Hague prohibits Lippolt, a salaried employee, from working beyond those hours. It is undisputed that the Comfort Inn where Lippolt sustained his injury was located near the Hague account that he intended to visit first the following morning. Hague does not require Lippolt to stay in a hotel near his final store of the day, and Lippolt testified that *Page 14 
his decision whether to stay near his final store of the day or near his first store for the next day varies daily. Whether he drove from Waterloo to Mason City after his final store visit on February 20 or before his first store visit on the morning of February 21, Lippolt's travel between those cities, from one Hague account to another, was plainly within the course of his employment, which required him to visit Hague accounts throughout his multi-state territory. Thus, we reject Hague's contention that Lippolt's travel to Mason City after his final store visit was entirely for his own personal comfort and convenience and that the time of Lippolt's injury weighs against a finding that Lippolt remained in the course of his employment.
 {¶ 24} Upon review, we find no error in the trial court's determination that Lippolt's injury occurred in the course of his employment, but our inquiry does not end there. Lippolt's injury must also have arisen out his employment before he is entitled to participate in the Workers' Compensation Fund. See Fisher at 277.
 {¶ 25} The statutory requirement that an injury must arise out of employment refers to a causal connection between the employment and the injury. Id. Courts determine whether an employee's injury arose out of his or her employment from the totality of the circumstances and consider the factors set forth in Lord v. Daugherty (1981),66 Ohio St.2d 441. Fisher at 278-279. Those factors include the following: "(1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." Lord at 444. The list of factors in Lord is not exhaustive, but is merely illustrative of the facts to be considered with respect to the totality of the circumstances. Fisher at 279, *Page 15 
fn. 2. Because workers' compensation cases are fact specific, a flexible and analytically sound approach is preferable to hard and fast rules, which can lead to unsound and unfair results. Id.
 {¶ 26} Again, we agree with the trial court's conclusion that the totality of the circumstances supports a causal connection between Lippolt's injury and his employment with Hague. First, despite Hague's contention that the hotel was over 100 miles and two hours from the last store Lippolt had visited, the Comfort Inn where Lippolt slipped was undisputedly in close proximity to the store Lippolt intended to visit early the next morning. While Hague did not have any control over the scene of the accident and did not require Lippolt to stay at particular hotels, Hague granted Lippolt the authority to choose where he would stay each night and paid for Lippolt's lodging. Most importantly, however, we find that Hague benefited from Lippolt's presence at the hotel. Lippolt's presence at a hotel near the stores he was required to visit during his weeks on the road provided Hague with a refreshed and well-rested employee to perform services each day, enabled Lippolt to visit more stores throughout his multi-state area on Hague's behalf, and eliminated the need for Hague to have employees in closer proximity to the stores in Lippolt's territory. Unlike an employee whose duties are confined to specific identifiable locations, Lippolt's employment responsibilities encompassed his week-long travel every other week in furtherance of Hague's business. Thus, upon review of the totality of the circumstances, we find that a sufficient causal connection between Lippolt's injury and his employment exists and that Lippolt's injury accordingly arose out of his employment with Hague. *Page 16 
 {¶ 27} Having determined that no genuine issues of material fact remain and that the trial court appropriately concluded that Lippolt's injury occurred in the course of and arose out of his employment, we find that the trial court did not err in granting Lippolt's motion for summary judgment or in denying Hague's motion for summary judgment. Accordingly, we overrule each of Hague's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
McGRATH, P.J., and BROWN, J., concur.
[1] There is conflicting evidence as to whether Lippolt's territory includes accounts in Indiana and Michigan. *Page 1