[Cite as *Kerr v. OhioHealth Corp.*, 2022-Ohio-2697.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Durbin W. Kerr, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 21AP-403 (C.P.C. No. 19CV-9117) |
| OhioHealth Corporation et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on August 4, 2022

**On brief:** *Jon Goodman Law, LLC*, and *Jon H. Goodman*; *Janet L. Phillips*, for appellant. **Argued:** *Jon H. Goodman.*

**On brief:** *Perez & Morris LLC*, *Richard A. Hernandez*, and *Rebecca J. Johnson*, for appellee OhioHealth Corporation. **Argued:** *Richard A. Hernandez.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Durbin W. Kerr, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion for summary judgment filed by defendant-appellee, OhioHealth Corporation ("OhioHealth"), and finding that Kerr was not entitled to participate in the workers' compensation fund for injuries he sustained on January 25, 2019. For the reasons which follow, we affirm.

I. Facts and Procedural History

{¶ 2} OhioHealth employed Kerr as a social worker in their hospice department. OhioHealth assigned patients to Kerr, and Kerr's job generally involved "link[ing] patients up with resources, provid[ing] support for the patient and families." (Kerr Depo. at 30.) Kerr would conduct a psychosocial assessment of his patients, which involved assessing the

patient's medical history, limitations, and abilities, reviewing the patient's current services, and anticipating future services the patient may need. Kerr worked from 8:00 a.m. to 4:30 p.m. and was a salaried employee.

{¶ 3} OhioHealth required that Kerr travel to see his patients in the personal residence or nursing facility where the patient was located. Kerr's assigned geographic area was Franklin County, Ohio, and OhioHealth generally assigned Kerr to patients located in the Clintonville and Linden neighborhoods. Kerr drove his personal vehicle to patient visits and typically visited four or five patients a day. OhioHealth reimbursed Kerr's mileage and provided him with a cell phone and laptop computer. Although OhioHealth maintained a work space for social workers at OhioHealth's Kobacker House, a hospice care center, Kerr was not required to report to Kobacker House on a daily basis. Kerr did report to Kobacker House once a week for a team meeting and stated that he would occasionally work at Kobacker House depending on his schedule. However, if there was "no reason for [him] to go to Kobacker House," Kerr would typically "work from home" and go "straight to [patient] visits from home." (Kerr Depo. at 55-56.) Kerr generally did his "[c]harting [and] phone work" from home. (Kerr Depo. at 56.)

{¶ 4} Kerr worked on a hospice team which consisted of himself, a nurse, a case manager, and a chaplain. In January 2019, Reverend Nooks was the chaplain on Kerr's hospice team. Kerr explained that "through either text or phone or in e-mail," he and the other members of his team would create their daily schedule of patient visits. (Kerr Depo. at 52.) Kerr had a "call-in interdisciplinary team meeting every morning" with his supervisor, but Kerr affirmed that he "construct[ed] [his own daily] schedule" without input from his supervisor. (Kerr Depo. at 51, 59.)

{¶ 5} On January 25, 2019, Kerr and Reverend Nooks drove together in Kerr's car to patient visits which began at 10:30 a.m. at a nursing home. Kerr and Reverend Nooks would often conduct patient visits together and were personal friends. As Kerr and Reverend Nooks' morning appointments concluded by 11:45 a.m., and they did not have another scheduled visit until 1:30 p.m., they decided to go to lunch. They went to the Rusty Bucket restaurant in Clintonville because it was "en route" to their 1:30 p.m. patient visit at a residence in the same neighborhood. (Kerr Depo. at 66.)

{¶ 6}  Kerr parked his car in the restaurant's parking lot and exited the vehicle.  As Kerr began walking toward the restaurant, he slipped and fell on ice in the parking lot. Reverend Nooks helped Kerr into the restaurant where they proceeded to have lunch. Following lunch, Kerr drove to Kobacker House and then went to the emergency room. Kerr sustained a concussion and a right wrist fracture from his fall in the parking lot.

{¶ 7}  Kerr filed an application for workers' compensation benefits regarding the injuries he sustained on January 25, 2019.  Following a June 14, 2019 hearing, an Industrial Commission of Ohio ("commission") district hearing officer ("DHO") denied Kerr's application, concluding Kerr did not receive his injuries in the course of or arising out of his employment with OhioHealth.  A commission staff hearing officer affirmed the DHO's order, and the commission refused further appeal.  On November 12, 2019, Kerr filed an action in the trial court, pursuant to R.C. 4123.512, asserting he had a right to participate in the workers' compensation fund for the injuries he sustained on January 25, 2019.

{¶ 8}  OhioHealth filed a Civ.R. 56 motion for summary judgment on September 17, 2020, asserting that the coming-and-going rule precluded Kerr from participating in the workers' compensation fund and that Kerr's injuries did not occur in the course of or arising out of his employment.  Kerr filed a motion for summary judgment on September 21, 2020, asserting the coming-and-going rule did not apply to him and that his injuries had occurred in the course of and arising out of his employment.  OhioHealth filed a memorandum in opposition to Kerr's motion for summary judgment on October 14, 2020.  Kerr filed a memorandum in opposition to OhioHealth's motion for summary judgment on October 19, 2020, asking the court to deny both parties' motions for summary judgment.

{¶ 9}  On July 19, 2021, the trial court issued a decision granting OhioHealth's motion for summary judgment and denying Kerr's motion for summary judgment.  The court held that the location of each of Kerr's patient visits was a fixed worksite, as Kerr's "substantial employment duties commenced when he would arrive at a patient's home." (Decision at 7.)  As such, the court held the coming-and-going rule prevented Kerr from participating in the workers' compensation fund.  The court further held that, even if Kerr was not subject to the coming-and-going rule, Kerr's injuries did not occur in the course of or arising out of his employment.

## II. Assignments of Error

{¶ 10} Kerr appeals and assigns the following two assignments of error for our review:

> I. The trial court erred as a matter of law by granting defendant-appellee's motion for summary judgment based on the finding that Mr. Kerr is a fixed situs employee and therefore subject to the coming and going rule.

> II. The trial court erred as a matter of law by granting defendant-appellee's motion for summary judgment based on the finding that Mr. Kerr was not injured in the course of and arising out of his employment based on the totality of the circumstances attending his injury.

## III. Analysis

{¶ 11} Kerr's assignments of error both contend the trial court erred by granting OhioHealth's motion for summary judgment. An appellate court reviews a grant of summary judgment under a de novo standard. *Capella III, L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6, citing *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8.

{¶ 12} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court

must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 13} When an Ohio employee is injured or contracts an occupational disease in the course of their employment, they are entitled to receive compensation for the loss sustained on account of the injury or occupational disease. R.C. 4123.54(A). Ohio workers' compensation statutes define an "[i]njury" as including "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C).

{¶ 14} The "test of the right to participate in the Workers' Compensation Fund is not whether there was any fault or neglect on the part of the employer or his employees, but whether a 'causal connection' existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment." *Bralley v. Daugherty*, 61 Ohio St.2d 302, 303 (1980). While workers' compensation statutes must be liberally construed in favor of employees, the statutes may not be construed so broadly as to eliminate the required causal connection to the injured worker's employment. *Hicks v. Safelite Group, Inc.*, 10th Dist. No. 20AP-136, 2021-Ohio-3044, ¶ 11; R.C. 4123.95; *Collins v. W. S. Life Ins. Co.*, 1st Dist. No. C-070189, 2008-Ohio-2054, ¶ 6.

{¶ 15} Historically, when analyzing whether an employee received an injury in the course of and arising out of their employment, similar fact patterns have caused courts to promulgate certain rules. *Fisher v. Mayfield*, 49 Ohio St.3d 275, 280 (1990). The "coming-and-going" rule is one such example. *Id. Accord Cossin v. Ohio State Home Servs., Inc.*, 10th Dist. No. 12AP-132, 2012-Ohio-5664, ¶ 22. The Supreme Court of Ohio has cautioned, however, that "no one test or analysis can be said to apply to each and every factual possibility" and no "one factor" can be considered controlling. *Fisher* at 280. Rather, a court must examine the separate and distinct facts of each case utilizing a flexible and analytically sound approach. *Id.*

### A. First Assignment of Error – Fixed Situs

{¶ 16} Kerr's first assignment of error asserts the trial court erred by finding he was a fixed situs employee subject to the coming-and-going rule. The coming-and-going rule is a "tool used to determine whether an injury suffered by an employee in a traffic accident occurs 'in the course of' and 'arises out of' the employment relationship so as to constitute a compensable injury." *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 119 (1998). The rule provides that "an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist." *MTD Prods., Inc. v. Robatin*, 61 Ohio St.3d 66 (1991), syllabus. *See Lippolt v. William R. Hague, Inc.*, 10th Dist. No. 08AP-140, 2008-Ohio-5070, ¶ 11, citing *Ruckman* at 119 (explaining the rationale for the coming-and-going rule "is that the workers' compensation statutes contemplate only hazards encountered in the discharge of employment duties and not hazards or risks, such as travel to and from the place of employment, that the general public similarly encounters").

{¶ 17} Thus, the coming-and-going rule applies only to employees who work at a fixed location, known as a fixed situs. *Cunningham v. Bone Dry Waterproofing, Inc.*, 10th Dist. No. 15AP-587, 2016-Ohio-3341, ¶ 11. A fixed situs employee is one who commences their "substantial employment duties only after arriving at a specific and identifiable work place designated by his employer." *Ruckman* at 119, citing *Indus. Comm. v. Heil*, 123 Ohio St. 604, 606-07 (1931). Whether an employment situs "is fixed or non-fixed * * * 'depends upon whether the traveling itself was part of the employment, either by virtue of the nature of the occupation or by virtue of the contract of employment.' " *Lippolt* at ¶ 12, quoting *Fletcher v. Northwest Mechanical Contrs., Inc.*, 75 Ohio App.3d 466, 473 (6th Dist.1991). *Accord Bennett v. Goodremont's, Inc.*, 6th Dist. No. L-08-1193, 2009-Ohio-2920, ¶ 19 (stating that "[c]onsideration of an employee's 'substantial employment duties' requires * * * [an] examination of the employee's duties as a whole and consideration of whether such duties were such as to make travel * * * an integral part of the employee's employment"); *Cossin* at ¶ 31 (finding a traveling sales consultant to be a non-fixed situs employee, as the employee's "travel over central Ohio roads to the homes of potential customers" was an "integral part of [the employee's] employment duties").

{¶ 18} In *Ruckman*, the Supreme Court held that well-drilling riggers who were injured in automobile accidents on their way to work were fixed situs employees. The riggers' job required they travel to remote locations over a three-state area to drill wells, and the riggers' work assignments typically lasted "between three and ten days" at a time. *Id.* at 124. The court found each drilling site to be a fixed place of employment, as the riggers had "no duties to perform away from the drilling sites to which they were assigned" and the "riggers' workday began and ended at the drilling sites." *Id.* at 120. The court observed that the focus of the fixed situs inquiry remained the same "even though the employee may be reassigned to a different work place monthly, weekly, or even daily," as "each particular job site may constitute a fixed place of employment." *Id.* The court found the coming-and-going rule applicable to the riggers' injuries.[1]

{¶ 19} In *Cunningham*, this court held that an injured worker, whose employment involved applying a special waterproofing paint to the foundations of residential homes, was a fixed situs employee. The worker in *Cunningham* drove his personal vehicle to each job site and indicated that he "could work as many as five jobs in five different locations in one day." *Id.* at ¶ 3. The *Cunningham* court held that each job site constituted a fixed place of employment, because the injured worker "commence[d] substantial employment duties only when he arrive[d] at the job site" and because each job site was at a "fixed location[]." *Id.* at ¶ 15. As such, the court held that the injured worker in *Cunningham* was "a fixed-situs employee as contemplated in *Ruckman*." *Cunningham* at ¶ 15. The court focused in particular on the fact that the injured worker's detour to his home to pick up paint brushes "was not required as a part of his work and [thus the injured worker] d[id] not commence his substantial employment duties in his pursuit of the paint brushes at his home." *Id.* at ¶ 14-15. The court made its holding "[u]nder these facts." *Id.* at ¶ 15.

{¶ 20} Several appellate districts have issued cases, like *Cunningham*, finding an employee with multiple job locations in a single day to be a fixed situs employee as to each location. The determinative characteristic of the fixed situs analysis in such cases is that the employee did not have any job duties to perform away from their designated worksites. *Gilham v. Cambridge Home Health Care, Inc.*, 5th Dist. No. 2008 CA 00211, 2009-Ohio-

---

[1] The court ultimately found, however, that the special hazard exception to the coming-and-going rule rendered the riggers' injuries compensable. *Ruckman* at 124-26. *See Cunningham* at ¶ 16 (identifying the four exceptions to the coming-and-going rule).

2842, ¶ 18 (holding that a home healthcare aide who saw two patients a day was a fixed situs employee as to each patient visit, because she had "no duties to perform outside the homes of her patients"); *Green v. Marc Glassman, Inc*., 11th Dist. No. 2017-P-0041, 2017-Ohio-9343, ¶ 16 (finding the injured worker's employment "demonstrated the determinative characteristics of a fixed-situs employee: he did not commence his employment duties (installing cash registers) until he arrived at a specific and identifiable work place (a store) designated by [his employer], albeit one that varied periodically"); *Palette v. Fowler Elec. Co*., 11th Dist. No. 2014-G-3196, 2014-Ohio-5376, ¶ 26, 28 (holding that a HVAC service technician who often "reported to two job sites in one day" was a fixed situs employee as he "generally commenced his duties servicing heating and cooling units when arriving on the site of his job on that day"); *Smith v. Akron*, 9th Dist. No. 22101, 2004-Ohio-4974, ¶ 12 (holding that a landscaper who traveled to "two job sites" on the day of his injury was a fixed situs employee, as "each landscaping project was at a specific and fixed location" and the landscaper did not have "any duties to carry out away from each work site to which they were assigned").

{¶ 21} Nevertheless, *Ruckman* relied on the fact that the riggers' "workday began and ended at the drilling sites" to find each drilling site a fixed situs of employment. *Ruckman* at 120. While the riggers in *Ruckman* changed their work site every three to ten days, they did not change their worksite in the course of the same day. Accordingly, *Ruckman* did not hold that an employee who changed their job location multiple times in a single day could be a fixed situs employee as to each location. *Accord Cossin* at ¶ 25 (observing that *Ruckman* "did not hold that an employee such as claimant, who was assigned to multiple locations during the course of a single day, was a fixed-situs employee as to each of those locations"); *Miller v. Admr., Bur. of Workers' Comp*., 9th Dist. No. 24805, 2010-Ohio-1347, ¶ 23 (noting that "while *Ruckman* held that an employee's work situs may change daily, it did not hold that an employee's fixed work situs may change on the hour within the same work day").

{¶ 22} Furthermore, as noted above, the Supreme Court has cautioned that a court must examine the separate and distinct facts of each case. The separate and distinct facts here, demonstrated by Kerr's testimony, are that while conducting patient visits was an integral part of his employment, it was not the only obligation of his employment. Kerr

affirmed that the "majority" of his employment activities included "charting in [his] home, making phone calls, [or being] in a person's home or in the nursing home" performing a psychosocial assessment. (Kerr Depo. at 57.) Kerr explained he had to create "a note" for each patient visit and that he had an interdisciplinary team meeting phone call with his supervisor every morning. (Kerr Depo. at 51, 40.)

{¶ 23} The trial court acknowledged that Kerr had work obligations outside of his patient visits, but characterized these obligations as non-substantial because Kerr performed them "in support of his in-home client visits." (Decision at 7.) OhioHealth similarly characterizes Kerr's obligations outside of his patient visits as non-substantial and asserts that the home health aide in *Gilham* "would have similar charting/paperwork duties to Mr. Kerr." (Appellee's Brief at 22.) However, in *Gilham* the court explained that the aide's "billable time [began] when [she] reache[d] the residence and terminate[d] when [she left] the residence," the aide had to have each patient "sign[] a time sheet confirming the time spent and the services performed" at the end of her patient visits, and that the aide was "not compensated for travel time or travel expenses between client visits." *Gilham* at ¶ 3, 18. Thus, in contrast to Kerr's employment, it does not appear that the aide in *Gilham* had any employment duties to perform outside of her patient visits.

{¶ 24} Considering Kerr's employment obligations as a whole, we do not view Kerr's job duties of charting patient records or participating in required phone calls as non-substantial aspects of his job. If Kerr failed to chart his notes regarding each patient visit or participate in the morning meeting phone call, Kerr would fail to perform significant obligations mandated by his employer. While Kerr stated he typically did his charting and phone calls at home, he also stated that he may have early morning appointments and need to "make [his phone] calls from the field" or need to do his charting at Kobacker House depending on his schedule. (Kerr Depo. at 53, 55-56.) Kerr further explained how his planned schedule for any day could change, as a patient may suddenly become "close to death or they've died and you have to drop whatever you're doing and go take care, go see the family at that point." (Kerr Depo. at 53.)

{¶ 25} Viewing the evidence in a light most favorable to Kerr, Kerr was not a fixed situs employee. Traveling to patient visits was an integral part of Kerr's job and Kerr did not spend his entire workday at a singular worksite. *See Ruckman* at 120; *Lippolt* at ¶ 12;

*Cossin* at ¶ 31. Moreover, as Kerr had substantial employment duties which he performed outside of his patient visits and at non-fixed locations, even pursuant to the analysis in *Cunningham* and similar cases, Kerr could not be considered a fixed situs employee.

{¶ 26} Accordingly, as a non-fixed situs employee, Kerr was not subject to the coming-and-going rule. Kerr's first assignment of error is sustained.

### B. Second Assignment of Error - In the Course of and Arising Out of Employment

{¶ 27} Kerr's second assignment of error asserts the trial court erred by finding his injury did not occur in the course of and arising out of his employment. An injured worker bears the burden to prove both that their injury occurred in the course of and arising out of their employment. *Fisher* at 277-78 (recognizing the "conjunctive nature of the coverage formula").

{¶ 28} "The phrase 'in the course of employment' limits compensable injuries to those sustained by an employee while performing a required duty in their employer's service." *Ruckman* at 120, quoting *Indus. Comm. v. Gintert*, 128 Ohio St. 129, 133-34 (1934). The "in the course of" prong concerns the time, place, and circumstances of the injury, which are "factors used to determine whether the required nexus exists between the employment relationship and the injurious activity." *Ruckman* at 120, citing *Fisher* at 277. While a worker need not be " 'injured in the actual performance of work for his employer,' " an injury is compensable only "if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business." *Ruckman* at 120, quoting *Sebek v. Cleveland Graphite Bronze Co.*, 148 Ohio St. 693 (1947), paragraph three of the syllabus.

{¶ 29} The "arising out of" prong contemplates "a causal connection between the employment and the injury." *Fisher* at 277. In *Lord v. Daugherty*, 66 Ohio St.2d 441 (1981), the Supreme Court held that whether a sufficient causal connection exists between the employment and the injury depends on the totality of the facts and circumstances surrounding the accident, including: (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident. *Lord* at syllabus. *See Fisher* at 277. The *Lord* factors are not

exhaustive, however, and an employee may still establish the requisite causal connection although they fail to establish one or more of these factors. *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 142 Ohio St.3d 425, 2014-Ohio-4531, ¶ 14, citing *Fisher* at 279, fn. 2. *Accord Ruckman* at 122.

{¶ 30} For non-fixed[2] situs employees "who travel regularly for work" and who sustain injury "during an employment-related trip, courts have generally held that the employee is entitled to benefits unless the injury occurred while the employee was on a personal errand." *Friebel* at ¶ 15, citing *Woodard v. Cassens Transport Co.*, 3d Dist. No. 14-11-22, 2012-Ohio-4015. This principal is referred to as the "traveling employee" doctrine. *Lippolt* at ¶ 17. *Accord Cossin* at ¶ 29, quoting *Griffith v. Miamisburg*, 10th Dist. No. 08AP-557, 2008-Ohio-6611, ¶ 13 (holding that a traveling employee's injuries are not compensable " 'where the injuries occurred during an employment-related trip, but while the employee was engaged in a purely personal mission or errand' "); *Cline v. Yellow Transp., Inc.*, 10th Dist. No. 07AP-498, 2007-Ohio-6782, ¶ 21 (stating that a traveling employee's injury is compensable when "it is the work-mandated traveling itself that not only occasions the injury but is the very object of the employment and the primary duty for which the employee is paid"); *Rankin v. Thomas Sysco Food Servs.*, 1st Dist. No. C-950904 (Nov. 27, 1996); *Heil*, 123 Ohio St. at 606-07; *Lohnes v. Young*, 175 Ohio St. 291 (1963). The Supreme Court has instructed courts to apply "the 'in the course of' and 'arising out of' tests described in *Fisher* and its progeny, including the totality-of-the-circumstances tests for causation described in *Lord* and *Ruckman*" even when an employee's "work creates the necessity for travel and the travel includes a personal purpose." *Friebel* at ¶ 28.

---

[2] For fixed situs employees injured on their employer's premises during a lunch or rest break, the injury will generally be found to have occurred in the course of and arising out of their employment. *See Bauder v. Mayfield*, 44 Ohio App.3d 91, 93 (3d Dist.1988); *Dolby v. Gen. Motors Corp.*, 62 Ohio App.3d 68, 69-70 (8th Dist.1989); *Lemming v. Univ. of Cincinnati*, 41 Ohio App.3d 194 (1st Dist.1987), syllabus; *Trotter v. Admr., Ohio Bur. of Workers' Comp.*, 8th Dist. No. 60325 (Apr. 2, 1992). *See also Kohlmayer v. Keller*, 24 Ohio St.2d 10 (1970), syllabus (holding that an employee's injury during a company "picnic which is sponsored, paid for and supervised by the employer" occurs "in the course of his employment"). For fixed situs employees who sustain injury when they travel off their employer's premises for lunch, the coming-and-going rule provides that the injury is generally not compensable. *Hill v. Gen. Metal Heat Treating, Inc.*, 47 Ohio App.3d 72, 73 (8th Dist.1988); *Hawkins v. Connor*, 3d Dist. No. 10-82-11 (Aug. 12, 1983); *Eagle v. Indus. Comm.*, 146 Ohio St. 1, 2-3 (1945). *See* Fulton, Ohio Workers' Compensation Law (2 Ed.1998) 190-91, Section 7.10 (explaining that injuries occurring on the "employer's premises during a regular lunch hour therefore occur in the course of employment," while in contrast an "injury suffered by an employee during an off-premises excursion even for a paid lunch break does not occur in the course of employment"). *Compare Miller*, 2010-Ohio-1347, at ¶ 30.

{¶ 31} In *Cline* we held that an over-the-road truck driver's injury, which occurred when the driver was hit by a car while walking from his employer-provided hotel to a restaurant during a federally mandated rest period, did not occur in the course of or arising out of his employment. The truck driver was "free to choose how and where he obtained his meals," although he was not permitted to drive his company-owned tractor to a restaurant when there was an eating establishment within walking distance of his hotel. *Cline* at ¶ 4. We found the truck driver's trip to the restaurant to be a "personal errand," as the driver was not engaged in an "activity that benefited [the trucking company] or furthered its business." *Id.* at ¶ 20. We concluded the accident did not arise out of the driver's employment, as it did not occur in proximity to the trucking company's location, the company had no control over the public street where the accident occurred, and because the company "received no cognizable benefit from [the driver's] presence at the scene of the accident." *Id.* at ¶ 22-24. *See also Elsass v. Commercial Carriers, Inc.*, 73 Ohio App.3d 112, 115 (3d Dist.1992) (holding that a truck driver's injury, which occurred after the truck driver left his employer-provided motel, was not compensable as the truck driver's trip to find "food, 'action,' or both" was taken "at his own peril" and the employer "received no benefit from [the driver's] presence in Washington D.C. at 12:30 a.m."); *Richardson v. Admr., Ohio Bur. of Workers' Comp.*, 10th Dist. No. 03AP-913, 2004-Ohio-1340, ¶ 16 (finding a traveling employee's injury which occurred after the employee left his employer-provided hotel and went to a restaurant to watch a basketball game and eat dinner was not compensable, as the employer "did not pay for [the employee's] meals and had no control over what arrangements [the employee] made to procure dinner each night"); *Marbury v. Indus. Comm.*, 62 Ohio App.3d 786, 790 (2d Dist.1989) (holding that, even if the employee's trip on a tour bus during a business trip was within the course of her employment, when the employee left the tour bus and "entered a souvenir shop in Washington for the purpose of purchasing a T-shirt for her daughter, she was on a purely personal mission * * * and was therefore outside the course of her employment"); *Roop v. Centre Supermarkets, Inc.*, 6th Dist. No. L-86-206 (Apr. 24, 1987).

{¶ 32} In *Jones v. USF Holland, Inc.*, 10th Dist. No. 10AP-537, 2011-Ohio-2368, we held that an over-the-road truck driver was not entitled to participate in the workers' compensation fund for an injury sustained when the driver slipped and fell in his hotel

bathroom. We found the truck driver's injury occurred in the course of his employment, as the driver was staying at a hotel approved and paid for by his employer during a federally mandated rest period. *Id.* at ¶ 20. However, we held that the injury did not arise out of the truck driver's employment, as the hotel was not in close proximity to the trucking company's terminal, the company did not have control over the scene of the accident, and because there was "simply an insufficient causal nexus between the highly personal act of taking a shower and [the trucking company's] business of transporting cargo by truck." *Id.* at ¶ 23. *Accord Woodard* at ¶ 22.

{¶ 33} In *Lippolt*, we held that a traveling employee's injury, which occurred when the employee slipped and fell while walking from his rental car to his employer-provided hotel, was compensable. The employee's injury in *Lippolt* occurred during a week-long business trip where the employee had to visit certain stores located throughout an eight-state territory. As the employee's job responsibilities "encompassed not only his store visits and his travel to, from, and between stores," but also his "stay in hotels" during the trip, we found the employee's walk from his rental car to his hotel following his last store visit of the day to be in the course of his employment and not a personal errand. *Id.* at ¶ 22. We concluded the injury arose out of the injured worker's employment, as the hotel was in close proximity to the employee's next store visit, the employer paid for the employee's lodging, and, "[m]ost importantly," because the employee's presence at the hotel benefitted his employer by enabling the employee "to visit more stores throughout his multi-state area" and "eliminat[ing] the need for [the employer] to have employees in closer proximity to the stores in [the employee's] territory." *Id.* at ¶ 26. *See also Griffith* at ¶ 19-35; *Masden v. CCI Supply, Inc.*, 2d Dist. No. 22304, 2008-Ohio-4396, ¶ 12.

{¶ 34} In *Cossin*, we found that a traveling sales consultant's injury in an automobile accident occurred in the course of and arising out of the sales consultant's employment. As the accident occurred while the employee was "traveling a direct route" from his last sales appointment of the day to his home, we held that the injury occurred in the course of the employee's job duties and not while the employee was on a personal errand. *Id.* at ¶ 32-33. We found that the automobile accident arose out of the sales consultant's employment, as there was "a clear causal connection between a substantial obligation of his employment,

i.e., driving to and from homeowners' residences, and the injuries he suffered in a motor vehicle accident during such a drive." *Id.* at ¶ 36.

{¶ 35} In *Jones v. Multicare Health & Edn. Servs., Inc.*, 8th Dist. No. 98899, 2013-Ohio-701, the court found genuine issues of material fact regarding whether a home healthcare worker's injury in an automobile accident occurred in the course of and arose out of his employment. The injured worker was a non-fixed situs employee, and the accident occurred when the employee was driving to a pharmacy to pick up a prescription for a patient following the employee's half-hour lunch break. *Id.* at ¶ 2-4. The court held that reasonable minds could find the injury occurred in the course of and arising out of the injured worker's employment, as the employee's "job duties required him to drive to the pharmacy to pick up the client's prescription" and the accident occurred "closer to the pharmacy than to downtown" where the injured worker had lunch. *Id.* at ¶ 19-24.

{¶ 36} Considering the foregoing authorities as applied to the specific facts of the present case, the record evidence fails to demonstrate that Kerr's injury occurred in the course of or arising out of his employment with OhioHealth. Kerr was not provided a formal lunch hour by OhioHealth. OhioHealth did not reimburse Kerr for lunch, Kerr did not deduct his lunches as a business expense, and OhioHealth did not have any policies regarding where Kerr could eat lunch. Kerr affirmed that lunches were "on [his] own." (Kerr Depo. at 49.) OhioHealth did not require Kerr to discuss patient care or to engage in any other work-related obligations during his lunch. Kerr affirmed that OhioHealth did not require him to eat lunch at the Rusty Bucket restaurant on January 25, 2019.

{¶ 37} The "in the course of" prong of the statutory test addresses the time, place, and circumstances of the injury. Although Kerr's injury occurred in the middle of his workday, it occurred during a 1 hour and 45-minute gap of time between his morning and afternoon patient visits. There is nothing in the record indicating that OhioHealth required Kerr to engage in job duties during this time between patient visits. While Kerr could have used the time to complete employment duties, he chose to use the time to go to a restaurant for lunch. Regarding the place of the injury, as *Lippolt*, *Jones v. USF Holland*, and *Cossin* demonstrate, when a traveling employee is injured in a place their employment duties require them to be, the employee will generally be within the course of their employment. Thus, had Kerr been injured while traveling on the public roadways from one patient to the

next, Kerr would likely have been in the course of his employment. *See Cossin* at ¶ 37 (holding that the traveling sales consultant was in the course of his employment while traveling on the "roads he was obligated by his employment to traverse"). However, Kerr was not injured while traveling on the roads from one patient visit to the next, but after he stopped at a restaurant to have lunch. Kerr failed to present evidence demonstrating that he was present at the restaurant because of an employment obligation.

{¶ 38} The circumstances of Kerr's injuries demonstrate that Kerr slipped and fell in a restaurant parking lot and that OhioHealth did not require Kerr to be present at the restaurant. The risk of slipping and falling in a restaurant parking lot, when there is no employment-related reason for being at the restaurant, is a risk or hazard encountered by the general public. *See Phelps v. Positive Action Tool Co.*, 26 Ohio St.3d 142, 144 (1986) (stating that the purpose of the Workers' Compensation Act "is not to make an employer an absolute insurer of the employee's safety, but only to protect the employee against risks and hazards incident to the performance of his work"); *Jenkins v. Shawnee Footwear*, 4th Dist. No. 88CA1792 (Mar. 20, 1990) (observing that an employee's injury, which occurred when the employee slipped and fell "on the premises of a carry-out store," was not compensable as it did not result from a risk which was "distinctive in nature or quantitatively greater than the risk common to the public"); *MRD Prods.* at 69. As Kerr was injured during time between patient visits, at a place his employment duties did not obligate him to be, and under circumstances which fail to demonstrate that he was engaged in an activity logically related to OhioHealth's business, the time, place, and circumstances of Kerr's injuries fail to demonstrate that Kerr was injured in the course of his employment.

{¶ 39} The "arising out of" prong of the statutory test addresses whether a causal connection exists between the employment and the injury, considering the totality of the facts and circumstances and the *Lord* factors. Kerr contends the scene of the accident was in close proximity to his place of employment, as the restaurant was on the route to his afternoon patient visit which were both located in Clintonville. Although there is no evidence in the record regarding the distance from the restaurant to the residence of Kerr's next patient, Kerr's testimony could support a finding that the scene of the accident was in proximity to Kerr's place of employment. *See Lippolt* at ¶ 26 (finding that the hotel where the employee slipped and fell "was undisputedly in close proximity to the store [the

employee] intended to visit early the next morning"). Regarding the control factor, Kerr "concedes that OhioHealth [did] not control the parking lot at Rusty Bucket," but asserts that OhioHealth did "dictate[] which patients he [saw] each work day." (Appellant's Brief at 28.) However, the control factor of the *Lord* test concerns "the amount of control the employer had over the situs of the injury, and not the degree of control the employer had regarding the actions of its employees." *Fisher* at 279. *Accord Cline* at ¶ 23 (observing that the control factor "is concerned with the degree of control over the scene, not the employee"). OhioHealth did not control the Rusty Bucket parking lot, which was the situs of Kerr's injury. Nevertheless, "the absence of [the control] factor cannot be considered controlling to deny coverage." *Griffith* at ¶ 31, citing *Fisher* at 280.

{¶ 40} Kerr contends OhioHealth benefitted from his presence at the restaurant, because he and Reverend Nooks "discussed patient care at lunch, although they were not required to do so." (Appellant's Brief at 28.) Kerr initially testified that he believed "in a general way" he and Reverend Nooks discussed patient visits during their lunch on January 25, 2019, but when asked if he specifically remembered discussing patient visits during lunch, Kerr responded stating, "I'll say no. I don't remember exactly what the conversation was." (Kerr Depo. at 72.) Moreover, as Kerr acknowledges, OhioHealth did not require him to discuss patient visits or any other work-related topics during lunch. *See Smith* at ¶ 17 (holding that an employee's act of "explaining job responsibilities to a new employee" during their lunch break did not create a causal connection between the lunch and the employment, as there was "no evidence in the record to suggest that the employer had specifically required Mr. Smith to discuss employment matters during the unpaid lunch break").

{¶ 41} Kerr further argues that OhioHealth received a benefit from having a refreshed and rejuvenated employee who had eaten lunch. However, in *Cline* we found no cognizable benefit to a trucking company when the company's truck driver was injured while walking across the street from his hotel to eat dinner at a restaurant. *Cline* at ¶ 24. In *Jones v. USF Holland*, we recognized that the trucking company derived "some benefit" from have a "well-rested employee" who had slept in a hotel, but found such benefit insufficient to establish a "causal nexus between the highly personal act of taking a shower and USF Holland's business of transporting cargo by truck." *Jones v. USF Holland* at ¶ 23.

In *Jones v. Multicare*, the court noted the employer received a benefit from a "refreshed and rejuvenated employee from having lunch," but specifically found the employer benefitted from the employee's location at the scene of the accident as the employee was on his way to "pick[] up the client's prescription – a necessary part of his job." *Jones v. Multicare* at ¶ 24.

{¶ 42} While every employer receives some benefit from having well-nourished employees, such benefit is insufficient, on its own, to establish a causal nexus between eating lunch and an injured worker's employment. In contrast to *Jones v. Multicare*, Kerr was not injured while driving to his next employment obligation following lunch, but was injured as he walked into a restaurant to have lunch. As Kerr did not perform any work-related duties at the lunch on January 25, 2019, and OhioHealth did not require Kerr to have lunch at the restaurant or to engage in any employment duties at lunch, the evidence fails to demonstrate that OhioHealth received a benefit from Kerr's presence in the Rusty Bucket parking lot. Rather, as in *Cline*, Kerr's trip to the restaurant for lunch constituted a personal errand. Considering the totality of the facts and circumstances of the present case, we are unable to find a causal connection between Kerr's act of going to the restaurant for lunch and OhioHealth's business of providing care to hospice patients.

{¶ 43} Thus, even viewing the evidence in a light most favorable to Kerr, the evidence demonstrates that Kerr did not receive his injuries on January 25, 2019 in the course of or arising out of his employment with OhioHealth. As such, we overrule Kerr's second assignment of error.

## IV. Conclusion

{¶ 44} Although we disagree with the trial court's conclusion that Kerr was a fixed situs employee, we must affirm the court's decision granting OhioHealth's motion for summary judgment as Kerr's injury did not occur in the course of or arising out of his employment. *See Hassey v. Columbus*, 10th Dist. No. 17AP-726, 2018-Ohio-3958, ¶ 33, quoting *Reynolds v. Budzik*, 134 Ohio App.3d 844, 846 (6th Dist.1999), fn. 3 (stating that, even when a trial court has stated erroneous reasons for its judgment, " 'an appellate court must affirm the judgment if it is legally correct on other grounds' "); *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). Therefore, having sustained Kerr's first assignment of

error but having overruled Kerr's second assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER, P.J., and SADLER, J., concur.

————————————